STATE OF NEBRASKA, APPELLEE, V. ART HADLEY,
APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. CONNIE MARKER,
APPELLANT.

288 N. W. 2d 37

Filed January 29, 1980. Nos. 42721, 42720.

Michael Kelley of Kelley & Kelley, for appellants.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The following actions were tried separately in the District Court for Dodge County, Nebraska, but for purposes of appeal were consolidated. They are identical in all material respects and therefore will be considered here as one.

These matters come before the court on appeal from a conviction for violations of the Securities Act of Nebraska. The appellant, Art Hadley, pleaded guilty to 20 counts of violating sections 8-1102 and 8-1117, R. R. S. 1943, and the appellant, Connie Marker, pleaded guilty to 5 counts of violation of the same sections. Each individual violation was, under the statute in effect at the time of the acts in question, punishable by a fine of not more than $5,000 or imprisonment for not more than 3 years, or by both such fine and imprisonment. The trial court sentenced the appellant Hadley to a term of 1 to 3 years in the Nebraska Penal and Correctional Complex on each of 20 counts, to run concurrently, and the appellant Marker to 1 year imprisonment in the Nebraska Center for Women on each of 5 counts, said terms to run concurrently. We have carefully

reviewed the record and believe the judgment of the trial court was in each instance correct and should be affirmed.

The evidence is virtually without dispute. The appellants and each of them engaged in an admitted scheme to sell to residents of the State of Nebraska unregistered securities in a project called "Camelot Cultivars." The plan contemplated the planting and cultivating of walnut trees, including spraying, fertilizing, and irrigating them. While the evidence discloses that some of the trees were planted, the evidence further discloses that the man who was to take care of the trees was never paid by the appellants to do the necessary work. Further, the evidence discloses that the project had little or no chance of success, that the appellants knew the project had little or no chance of success, and more importantly, that the interests in the project, which were securities, were not registered with the Department of Banking of the State of Nebraska as required by law.

The evidence further discloses that the appellants and each of them collected from investors some $55,000, of which more than $40,000 went directly into the pockets of the appellants. All the money invested was lost by the investors.

The evidence further discloses that at the very outset of this project the appellants were advised by their attorney of the need to register the securities, and later in 1977 appellants had a meeting with Mr. Barry Lake who was in charge of the securities division of the Nebraska Department of Banking. They were advised at that time that they were selling an unregistered security, were requested to withdraw the offering, tender back the money collected, and register the securities in accordance with law. Notwithstanding that warning from the Department of Banking and the offer to permit the appellants to correct the situation, appellants continued to sell the

securities without making any efforts to comply with the securities law or to make the investors whole.

Appellants assign three errors: (1) They maintain the trial court abused its discretion and erred in sentencing the appellants to an excessive term of imprisonment; (2) they maintain the trial court erred in relying upon a presentence report which was presented in an incomplete and prejudicial form; and (3) they maintain the trial court erred in considering testimony presented at the sentencing where insufficient notice that such testimony would be offered had been given to the appellants. For reasons which we will more fully explain hereinafter, the assignments are wholly without merit.

On March 26, 1979, the appellants appeared before the court with counsel of their choice and after careful inquiry by the court as to the consequences, voluntarily entered pleas of guilty to the various charges. The appellants appeared again in District Court on April 5, 1979, with their attorney, at which time the State offered evidence concerning the crimes as part of the sentencing procedure.

At that hearing on April 5, 1979, and without objection, the State was permitted to introduce evidence concerning the background and history of the offenses for which the appellants had previously entered pleas of guilty. At the conclusion of the evidence, the court asked appellants' counsel whether he had "anything at this time * * * or later?" Counsel replied, "Nothing now." The record further reflects that counsel at no time requested a continuance nor asked for an opportunity to cross-examine the witnesses called by the State. Nor did the appellants request additional time in order to produce any additional or countervailing evidence.

The parties again appeared before the court some 14 days later on April 19, 1979. The record indicates that no effort was made by appellants' counsel to produce any additional evidence prior to sentencing.

In making this observation, we do not intend in any manner to be critical of appellants' counsel, who was other than present counsel, but simply point out that if in fact there was some evidence which the appellants believed could be introduced, adequate opportunity was given them to do so. At the sentencing hearing on April 19, 1979, the court inquired of appellants' then counsel as to whether he had received a copy of the presentence report. He indicated that he had seen a copy of the report. The court then said, "Are there any changes, corrections or additions that should be made at this time?" Counsel responded, "No, not that I can think of." The report, in both cases, recommended that probation not be granted and that each appellant be incarcerated for some period of time.

With regard to the appellants' contention that the trial court erred in relying on the presentence report which was presented in an incomplete and prejudicial form, the evidence simply does not support that claim. Appellants were given every opportunity to correct or amend the presentence report and to present any evidence they desired. They chose not to do so. The only contentions made by appellants at the time of sentencing was a claim that if given an opportunity and placed on probation they would make restitution. There was no evidence, however, to support that claim. No plan was offered nor had any efforts been made by the appellants to make restitution voluntarily, though adequate time existed had they intended to do so. Moreover, the presentence report indicated that the appellant Hadley was presently employed at a job paying $115 per week and was delinquent in the payment of child support to the children of his first marriage. The court had no reason to rely on or believe that a sentence of probation would result in restitution being made. Likewise, no evidence was offered on behalf of the appellant Marker as to how or in what

manner restitution might be made. The appellants had every opportunity to present a plan or such other evidence as they desired to indicate how and in what manner restitution would be accomplished. They simply failed to do so. There is no evidence to support the claim that the presentence report was either incomplete or prejudicial.

Appellants further maintain that the trial court erred in considering testimony presented at the sentencing where insufficient notice had been given to the appellants. The record, however, discloses that the evidence was introduced without objection and that the appellants' counsel was afforded an opportunity to present any further evidence, either at that time or at a later time, but elected not to do so. The form of the testimony at the hearing on April 5, 1979, was no different or other than that which might have been included in the presentence report. As a matter of fact, by introducing the evidence from live witnesses appellants were afforded the opportunity to either object to the testimony or cross-examine the witnesses. Appellants sought to do neither, and did not object to the introduction of the testimony.

And finally, it is contended that the sentences were excessive. In the first instance, we have often said that a sentence within statutory limits will not be disturbed on appeal absence an abuse of discretion on the part of the trial court. See State v. Stephenson, 199 Neb. 362, 258 N. W. 2d 824. Moreover, while neither appellant had any previous criminal record, it is apparent from the evidence adduced that both appellants had been warned of the violations well in advance of the time they proceeded to carry out their scheme. Notwithstanding the fact that both their attorney and the Department of Banking had informed them of the violations and had afforded them an opportunity to correct the situation without criminal prosecution, the appellants chose to ignore those warnings and proceed as

they wished. Too often what is described as "white-collar crimes" go unpunished because of the argument that there was "no violence." While it may be true that there was no physical violence involved herein, it is likewise true that the taking of an individual's life savings may do more violence to their well-being than the physical abuse. The appellants, without care or concern for their investors who relied upon the appellants' ability to tell a good story, willingly accepted the investors' money in return for illegal securities. Individuals placed their confidence as well as their money in appellants, only to have the confidence destroyed and the money consumed. So-called "white-collar" criminals must understand that such behavior will not be tolerated and even first offenders may be required to serve time in prison. Punishment by incarceration in these cases was demanded. The sentences in these cases were not in any manner excessive and may have been said to be light. The judgment of the District Court is affirmed.

AFFIRMED.